NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0012n.06

No. 23-5296

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 10, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| FABIAN MARIEUS FORMOSA, | ) | |
| Plaintiff-Appellant, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
|  | ) | |
| WILLIAM BYRON LEE, Governor of the State of Tennessee, in his official capacity; DAVID B. RAUSCH, Director of the Tennessee Bureau of Investigation, in his official capacity, | ) | |
|  | ) | OPINION |
| Defendants-Appellees. | ) | |

Before: WHITE, STRANCH, and NALBANDIAN, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Plaintiff-Appellant Fabian Marieus Formosa challenges the retroactive application of provisions of Tennessee's sex-offender-registry statute as violative of the Ex Post Facto Clause of Article 1, Section 10, of the United States Constitution. The district court dismissed the case under the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971). Formosa appeals, arguing that the district court erred in concluding that his case does not fall within the extraordinary-circumstances exception to *Younger* abstention. We AFFIRM.

**I.**

Since 1994, Tennessee has imposed increasing requirements on persons convicted of certain sex offenses. *See, e.g.*, Act of May 10, 1994, ch. 976, 1994 Tenn. Pub. Acts 975–80; Act of May 7, 2003, ch. 95, 2003 Tenn. Pub. Acts 166–68. The Tennessee Sexual Offender and Violent

Sexual Offender Registration, Verification, and Tracking Act of 2004 (SORA), Tenn. Code Ann. §§ 40-39-201 to -218, in its amended form, provides the current statutory framework. Under SORA, every person convicted of a qualifying offense must report to the appropriate law-enforcement agency "[w]ithin forty-eight (48) hours of establishing or changing a primary or secondary residence, establishing a physical presence at a particular location, becoming employed or practicing a vocation or becoming a student in" Tennessee. *Id.* § 40-39-203(a)(1). A covered person also must provide personal information, like date and place of birth and Social Security number, a listing of email, social media, and instant messaging account information, and more, *see id.* § 40-39-203(i), and the person must report any changes to the information, *see id.* § 40-39-203(a)(4). The Tennessee Bureau of Investigation (TBI) maintains a database of the information, and SORA provides that much of the information "shall be considered public information" and made available online. *Id.* § 40-39-206(a), (d). SORA further imposes periodic reporting requirements, *see id.* § 40-39-204(b)–(c), and restrictions on residence and employment, *see id.* § 40-39-211(a)–(c), movement, *see id.* § 40-39-211(d), and the ability to be alone with a minor, *see id.* § 40-39-211(k).

Formosa brought this action under 42 U.S.C. § 1983 against Tennessee Governor William Byron Lee and TBI Director David B. Rausch (State Defendants) in their official capacities, seeking declaratory and injunctive relief barring the enforcement of SORA's provisions against him.[1] Formosa asserted that SORA's requirements constitute punishment and were being applied to him based solely on 1988 criminal convictions for offenses committed the year before, thus violating the Ex Post Facto Clause of the Constitution. State Defendants moved to dismiss, arguing

---

[1] Initially, Formosa also named the Metropolitan Government of Nashville and Davidson County, Tennessee, as a defendant, but he and the Metropolitan Government later jointly moved to dismiss the Metropolitan Government under Federal Rule of Civil Procedure 21.

that because Formosa acknowledged that state criminal charges were pending against him for violating SORA, the district court should abstain from exercising jurisdiction under *Younger*. Formosa then amended his complaint to explicitly exclude any relief for SORA violations that occurred on or before the date of his original complaint, and State Defendants again moved to dismiss under *Younger*.

The district court granted State Defendants' motion. It concluded that, notwithstanding the amended complaint's elimination of any claims relating to past SORA violations, Formosa's requested relief would interfere with the pending state proceedings by "cast[ing] a shadow over the state court in adjudicating the rights of [Formosa] in the state court, especially if the court were confronted with an ex post facto argument as to the requirements to which [Formosa] stands accused of violating." R. 38, PID 192. The district court rejected the argument that the state court's inability to issue declaratory or injunctive relief meant Formosa lacked an adequate opportunity to present his ex post facto claim, observing that he could assert it as a defense to the prosecution. Nor was the district court persuaded that the state courts' consistent rejection of ex post facto challenges to SORA rendered proceeding through the state judicial system futile. Finally, the court found that the extraordinary-circumstances exception to *Younger* abstention does not apply.

## II.

"In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). The Supreme Court "has recognized, however, certain instances in which the prospect of undue interference with state proceedings counsels against federal relief." *Id.* One such circumstance is embodied in the

*Younger* abstention doctrine, *see* 401 U.S. at 43–45, "a judicial creation born from the principles of equity, comity, and federalism," *Hill v. Snyder*, 878 F.3d 193, 204 (6th Cir. 2017).

The Court "ha[s] carefully defined . . . the areas in which such abstention is permissible, and it remains the exception, not the rule." *New Orleans Pub. Serv., Inc. v. Council of New Orleans* (*NOPSI*), 491 U.S. 350, 359 (1989) (cleaned up). We must, therefore, "treat *Younger* as a limited carve-out to federal courts' 'virtually unflagging obligation' to exercise their jurisdiction." *Hill*, 878 F.3d at 205 (quoting *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988)). A federal court should abstain only when the state proceeding falls into one of "three 'exceptional' categories," *Sprint*, 571 U.S. at 78: (1) "state criminal prosecutions"; (2) certain "civil enforcement proceedings"; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 368. Even when a case implicates one of these categories, three additional criteria must be met: "(1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise [the plaintiff's] constitutional claims." *Doe v. Univ. of Ky.*, 860 F.3d 365, 369 (6th Cir. 2017).

On appeal, Formosa does not dispute that these requirements for *Younger* abstention are satisfied. He argues instead that the district court erred in rejecting his contention that "there is 'an extraordinarily pressing need for immediate federal equitable relief,'" one of the few, narrow exceptions to *Younger*. *Aaron v. O'Connor*, 914 F.3d 1010, 1019 (6th Cir. 2019) (quoting *Kugler v. Helfant*, 421 U.S. 117, 125 (1975)). Reviewing the district court's abstention decision de novo, *see Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 700 (6th Cir. 2013), we find no error.

4

**A.**

Formosa argues that extraordinary circumstances exist here because "Tennessee's appellate courts are patently unwilling to protect the constitutional rights of individuals subjected to retroactive SORA application." Appellant Br. 36. He first notes our decision in *Does #1–5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), holding that retroactive application of Michigan's sex-offender-registry law violates the Ex Post Facto Clause, *see id.* at 705–06. He then points to the Tennessee Supreme Court's decision in *Ward v. State*, 315 S.W.3d 461 (Tenn. 2010), concluding that SORA is "nonpunitive" and a trial court's failure to advise a defendant of the registration requirements does not render a guilty plea constitutionally invalid, *id.* at 470, 472, and Tennessee intermediate appellate court decisions that have held, relying on *Ward*, that SORA does not violate the Ex Post Facto Clause, including cases post-dating *Does #1–5 v. Snyder*, *see, e.g.*, *State v. Atwell*, No. E2021-00067-CCA-R3-CD, 2022 WL 601126, at *7 (Tenn. Crim. App. Mar. 1, 2022); *Clark v. Gwyn*, No. M2018-00655-COA-R3-CV, 2019 WL 1568666, at *7–8 (Tenn. Ct. App. Apr. 11, 2019); *Wiggins v. State*, No. M2018-00488-CCA-R3-HC, 2019 WL 1092729, at *2 (Tenn. Crim. App. Mar. 8, 2019). He further notes that the Tennessee Supreme Court has denied applications for permission to appeal in such cases. Thus, Formosa says, the intermediate-court decisions are the best indicia of how Tennessee courts would rule on his ex post facto claim, demonstrating that resort to the state system for his claim would be futile, and *Younger* should be no barrier to pursuing his claim in federal court.

Extraordinary circumstances sufficient to overcome abstention where *Younger* is otherwise applicable involve "irreparable injury, the traditional prerequisite to obtaining an injunction." 401 U.S. at 46. But "even irreparable injury is insufficient unless it is 'both great and immediate.'" *Id.* (quoting *Fenner v. Boykin*, 271 U.S. 240, 243 (1926)). "[T]he cost, anxiety, and inconvenience

5

of having to defend against a single criminal prosecution" are not "'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by [the plaintiff's] defense against a single criminal prosecution." *Id.* And "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it." *Id.* at 54. Circumstances must "render the state court incapable of fairly and fully adjudicating the federal issues before it," thus "creating an extraordinarily pressing need for immediate federal equitable relief." *Kugler*, 421 U.S. at 124–25.

Even accepting that state precedent renders Formosa unlikely to succeed in the Tennessee courts, and notwithstanding our decision in *Does #1–5 v. Snyder* invalidating retroactive application of a statute similar to SORA, Formosa's case fails to present extraordinary circumstances. To start, he has not shown the state judicial system is "incapable of fairly and fully adjudicating" his claim, *id.* at 124. "'[S]tate courts have the solemn responsibility equally with the federal courts' to safeguard constitutional rights," *Trainor v. Hernandez*, 431 U.S. 434, 443 (1977) (quoting *Steffel v. Thompson*, 415 U.S. 452, 460–61 (1974)), and the comity notion undergirding *Younger* "precludes any presumption that the state courts will" fail to do so, *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (emphasis omitted). A state judicial system is not an unfair forum simply because its ruling on an issue of federal law differs from ours. Such divergence is to be expected in our system of federalism. After all, "the views of the federal courts of appeals do not bind the [Tennessee] Supreme Court when it decides a federal constitutional question, and disagreeing with the lower federal courts is not the same as ignoring federal law." *Johnson v. Williams*, 568 U.S. 289, 305 (2013); *cf. Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) (concluding that a plaintiff lacked an adequate opportunity to

present his claim for *Younger* purposes when a state administrative tribunal "was incompetent by reason of bias to adjudicate the issues pending before it").[2]

Nor do Formosa's circumstances create "an extraordinarily pressing need for *immediate* federal equitable relief," *Kugler*, 421 U.S. at 125 (emphasis added). If the Tennessee courts rule against his ex post facto claim, Formosa may petition the United States Supreme Court for a writ of certiorari. *Cf. Duty Free Shop, Inc. v. Administracion de Terrenos de P.R.*, 889 F.2d 1181, 1183 (1st Cir. 1989) (noting that "[a] party . . . may appeal its claim through the state system, eventually asking the United States Supreme Court to review the federal question," in concluding that the party had an adequate opportunity to present a constitutional claim despite the party "believ[ing] the state will reject the claim on the merits"); *Dubinka v. Judges of the Superior Ct.*, 23 F.3d 218, 224–25 (9th Cir. 1994) (agreeing with *Duty Free Shop*). And merely having to wait for constitutional rights to be vindicated through the appellate process cannot give rise to extraordinary circumstances because it presents no "injury other than that incidental to every criminal proceeding brought lawfully and in good faith," *Younger*, 401 U.S. at 47 (quoting *Douglas v. City of Jeannette*, 319 U.S. 157, 164 (1943)).

On this issue, we find the Supreme Court's decision in *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), instructive. In that case, after a state court had entered judgment against a cinema under a public-nuisance statute for displaying obscene films, the cinema's successor went to federal court seeking an injunction and a declaration that the statute was unconstitutional and

---

[2] To be sure, *Younger* acknowledged that abstention is inappropriate if "a statute [is] flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." 401 U.S. at 53–54 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)). But "[s]howing such flagrant unconstitutionality is a high bar," *Univ. of Ky.*, 860 F.3d at 371, and, in any event, Formosa does not advance such an argument in this case, *cf. Middlesex*, 457 U.S. at 437 ("Respondents have not challenged the findings of the District Court that there was no bad faith or harassment on the part of petitioner and that the state rules were not 'flagrantly and patently' unconstitutional. We see no reason to disturb these findings . . . ." (quoting *Younger*, 401 U.S. at 53) (citation omitted)).

unenforceable. *See id.* at 598. The cinema "contend[ed] that exhaustion of state appellate remedies should not be required because an appeal would have been 'futile,'" noting a state supreme court precedent upholding the statute. *Id.* at 610. Although the precedent "had absolutely nothing to say" regarding the cinema's "principal contention"—the impropriety of a "blanket injunction against a showing of all films, including those which have not been adjudged obscene"—the Court noted a "[m]ore important[]" reason why the cinema's argument was unpersuasive. *Id.* "[T]he considerations of comity and federalism which underlie *Younger* permit no truncation of the exhaustion requirement merely because the losing party in the state court of general jurisdiction believes that his chances of success on appeal are not auspicious." *Id.* The Court refused "to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities" under the Supremacy Clause. *Id.* at 611. Thus, the Court concluded that abstention was appropriate unless one of *Younger*'s exceptions applied. *See id.*

To be sure, *Huffman*'s discussion of futility concerned whether a state proceeding was "pending" for *Younger* purposes if the federal plaintiff had not exhausted the appeals process in the state judicial system, not whether extraordinary circumstances were present. But *Huffman*'s reasoning still bears on the latter issue. *Younger*'s concern for comity requires us to presume that state courts take their federal constitutional obligations seriously. If unfavorable state-court precedent does not excuse exhaustion of state appeals for the pending-proceeding requirement, it is reasonable to conclude that such precedent does not demonstrate that the state judicial system is unable to fairly adjudicate a federal issue for purposes of the extraordinary-circumstances exception.

**B.**

Formosa also argues that *Mulholland v. Marion County Election Board*, 746 F.3d 811 (7th Cir. 2014), counsels against abstention. There, the Seventh Circuit held that a "previous final federal judgment" by a district court in another case "against the defendant Election Board holding the same statute" at issue "facially unconstitutional . . . amount[ed] to an extraordinary circumstance making *Younger* abstention inappropriate." *Id.* at 813. Although the injunction in the earlier case "was limited to enforcement of the [statute] against the plaintiffs in that case," "the declaratory portion of" that judgment was not so limited and proclaimed the "statute facially unconstitutional." *Id.* at 818. The Seventh Circuit concluded that "the Election Board's attempt to enforce a law that a federal court has already told the Board in a final judgment is unconstitutional," *id.* at 819, "shaves very close to harassment or bad faith prosecution," *id.* at 818, and "represents the sort of 'other unusual circumstance that would call for equitable relief,'" *id.* at 819 (quoting *Younger*, 401 U.S. at 54). "Stated in terms of the equitable principles upon which *Younger* is based, the costs to comity and our federalism of enjoining state proceedings are significantly lessened where a federal court has previously held the same law facially unconstitutional in a final judgment against the same defendant." *Id.*

*Mulholland* is readily distinguishable. The Seventh Circuit's reasoning rested on the Election Board's bringing an action against the federal plaintiffs despite a final judgment by a district court in a prior action involving the Election Board declaring the statute facially unconstitutional. Here, Formosa brings to our attention a handful of district court decisions concluding that retroactive application of SORA violates the Ex Post Facto Clause. But the injunctive and declaratory portions of the judgments in those cases apply only to the plaintiffs in those suits, and the judgments say nothing about the facial constitutionality of Tennessee's SORA

or the unconstitutionality of applying SORA to non-parties like Formosa. *See Doe v. Rausch*, No. 17-cv-217, at 1–2 (E.D. Tenn. May 20, 2019); *Doe v. Rausch*, No. 17-CV-504, at 1–2 (E.D. Tenn. May 14, 2020); *Doe #1 v. Lee*, Nos. 16-cv-02862, 17-cv-00264, at 1–2 (M.D. Tenn. Apr. 5, 2021); *Doe v. Lee*, No. 21-cv-00028, at 1–2 (M.D. Tenn. Dec. 13, 2022); *Does #1–9 v. Lee*, Nos. 21-cv-00590, 21-cv-00593, 21-cv-00594, 21-cv-00595, 21-cv-00596, 21-cv-00597, 21-cv-00598, 21-cv-00624, 21-cv-00671, at 1–2 (M.D. Tenn. Mar. 2, 2023).[3]

## C.

Finally, Formosa argues that he will suffer irreparable injury. He invokes *Page v. King*, 932 F.3d 898 (9th Cir. 2019), in support. There, the Ninth Circuit concluded that abstention was unwarranted because the federal plaintiff's injury from detention without a valid probable cause determination while he awaited his state criminal trial was "'irretrievable' regardless of the outcome at trial," noting that "a post-trial adjudication of his [due-process] claim [would] not fully vindicate his right to a current and proper pretrial probable cause determination." *Id.* at 904. The court also discussed *Mannes v. Gillespie*, 967 F.2d 1310 (9th Cir. 1992), its prior decision holding that extraordinary circumstances existed for a federal court to hear a Double Jeopardy Clause claim. *See* 932 F.3d at 903–904. "[A] *post*-trial ruling that the state violated" the federal plaintiff's right "would come too late," the court had reasoned, because "'[t]he Fifth Amendment's protection against double jeopardy . . . is not against being twice punished, but against being twice put in jeopardy,' that is, against facing two trials." *Id.* (second and third alterations in original) (quoting *Mannes*, 967 F.2d at 1312).

---

[3] We note that an appeal in the *Does #1–9* case is currently pending before our court. *Doe #1 v. Lee*, No. 23-5248 (6th Cir. argued Dec. 7, 2023).

Unlike the claims in these Ninth Circuit cases, Formosa's injury will not become irreparable during the state proceedings or upon their conclusion. A court could conclude that enforcing SORA against Formosa amounts to "retroactive application of penal legislation," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994), decide that he cannot be bound by SORA, and declare him free of the statute's strictures. Thus, Formosa's case is unlike *Page*, where relief from *pretrial* detention without an adequate probable cause determination would not be possible if relief came *after* the trial had concluded, or *Mannes*, where the Double Jeopardy Clause right against a second trial could not be vindicated once a second trial has already occurred.

## III.

For the reasons stated, we AFFIRM.